1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES  DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

Northern District of California

MICHAEL A. VILLALOBOS,

              Plaintiff,

   v.

TOM J. VILSACK,

             Defendant.

_____/

No. C 12-138 MEJ

**ORDER GRANTING  IN PART AND
DENYING IN PART MOTION TO
DISMISS**

**Re: Docket No. 37**

### INTRODUCTION

Plaintiff Michael A. Villalobos (Plaintiff), a former probationary Forestry Technician with the United States Department of Agriculture (USDA), brings this action against Defendant Tom Vilsack (Defendant), as the Secretary of the USDA, for unlawful discrimination related to his termination from the USDA in 2010.  Pending before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure (Rule) 12(b)(1) and 12(b)(6).  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and VACATES the October 18, 2012 hearing.  After consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for the reasons set forth below.

### BACKGROUND

In June 2002, the USDA Forest Service (the Agency) hired Plaintiff as a GS-462-03 Temporary Forestry Aid for the Los Padres National Forest.  First Am. Compl. (FAC) ¶ 16, Dkt. No. 35; Morrow Decl. ¶ 3, Dkt. No. 37-1.  Plaintiff worked in this position for a few months each year from 2004 through 2006, and 2008.  Morrow Decl. ¶ 3.  On July 19, 2009, the Agency hired Plaintiff to work as a GS-462-05 Forestry Technician in Eldorado National Forest.  FAC ¶ 18; Morrow Decl. ¶ 4.  This was a career conditional appointment subject to completion of a one year initial

1  probationary period. Morrow Decl. ¶ 4. In January 2010, Plaintiff transferred back to the Los

2  Padres National Forest. FAC ¶ 18; Morrow Decl. ¶ 4. Plaintiff states that he requested the transfer

3  in order to provide care for his teenage daughter's serious health condition. FAC ¶ 18. Plaintiff

4  often took intermittent time off work to assist with his daughter's care, using a combination of sick

5  leave, annual leave, and vacation time. *Id.* Plaintiff states that he was never informed of his rights

6  under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, to take job-protected leave.

7  *Id.*

8       In late March 2010, Plaintiff was reassigned to the Santa Maria detail under the temporary

9  supervision of Ken Kunert. *Id.* ¶ 19. Immediately after his assignment, Plaintiff alleges that Kunert

10  began to treat him differently than other similarly-situated employees, including belittling his work

11  performance, following him around to monitor his work, and expressing frustration when Plaintiff

12  took time off to care for his daughter. *Id.*

13       In late April 2010, Plaintiff strained his neck while lifting five-gallon jugs of water

14  out of a truck and was diagnosed with C-T strain and cervical muscle spasm. *Id.* ¶ 20. Plaintiff was

15  able to return to work on modified duty from April 30 to June 9, 2010. *Id.* Over this time period,

16  Plaintiff's medical condition improved and he was eventually released to full duty by June 9, 2010.

17  *Id.* Because of his medical disability, Plaintiff was provided a light duty assignment. *Id.*

18       On or about May 22, 2010, Plaintiff met with Kunert and complained about what he felt was

19  discrimination based on his Mexican nationality and ancestry, and discrimination because of his own

20  disability which did not allow him to perform his normal job duties. *Id.* ¶ 21. Plaintiff also

21  complained that Kunert was treating him differently because of his light duty assignment, his

22  inability to perform his normal duties as a Forestry Technician, and because he took time off to care

23  for his daughter's health condition. *Id.* Plaintiff alleges that Kunert prepared a document during the

24  meeting in which he laughed at Plaintiff's complaints and wrote the word "MEXICAN" in large

25  block letters. *Id.* Kunert gave Plaintiff a copy to him, but said it was not a write up or disciplinary

26  notice. *Id.*

27       Plaintiff took a medical leave of absence beginning on or about June 10, 2010 to

28

2

1    treat his own health condition.  *Id.* ¶ 23.  On July 13, 2010, during Plaintiff's probationary period,

2    the Agency issued him a Notice of Termination (Notice).  *Id.* ¶ 6; Morrow Decl. ¶ 5.  The Notice

3    informed Plaintiff that effective July 16, 2010, he would be terminated for the following charges: (1)

4    use of discourteous language towards a person responsible for assigning work; (2) use of rude and

5    confrontational language towards others; and (3) lack of candor.  FAC, Ex. A; Morrow Decl. ¶ 5,

6    Ex. A.  The Notice described seven specific examples where Plaintiff was rude, angry, defensive,

7    confrontational, or unresponsive during his employment.  *Id.*  Examples included Plaintiff getting

8    mad when reminded not to use a Government vehicle to get lunch, responding that reports were

9    "stupid" when instructed to complete them, and being unresponsive to radio calls for three hours.

10   FAC, Ex. A at 2.

11         The Notice explained Plaintiff's right to file an appeal to the Merit Systems Protection Board

12   (MSPB) for discrimination based on partisan political reasons or marital status and his right to file

13   an Equal Employment Opportunity (EEO) complaint of discrimination based on race, color, religion,

14   sex, age, national original, handicapping condition, or reprisal for former EEO activity.  *Id.* at 3-4.

15   For the MSPB process, the Notice provided that Plaintiff had 30 days to submit an appeal.  *Id.* at 3.

16   For the EEO process, the Notice provided that Plaintiff needed to contact an EEO counselor within

17   45 days of receipt of the letter to initiate an EEO discrimination complaint.  *Id.* at 4.  The Notice

18   provided a telephone number to initiate the EEO process, but also stated that if Plaintiff had any

19   questions "about the process regarding an appeal," he should contact "R5 Labor Relations Specialist

20   Virgil Todd Morrow" at a separate telephone number.  *Id.*

21         On July 22, 2010, Plaintiff contacted Morrow and spoke with him about the MSPB and EEO

22   procedures.  Morrow Decl. ¶ 6; Pl.'s Opp'n at 3, Dkt. No. 39.  Plaintiff also made two phone calls to

23   Peggy Hernandez, the person who issued the termination letter, during the last week of July to

24   complain about the reasons for his termination.  FAC ¶ 7.  Plaintiff states that he was only able to

25   speak with Hernandez's assistant, who informed him that he never be allowed to speak with

26   Hernandez.  *Id.*  Plaintiff alleges that he never received a return phone call from Hernandez.  *Id.*

27   Plaintiff also alleges that he placed three separate phone calls to his immediate supervisor, Erik Van

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Walden, in late July or early August to discuss the basis for the termination notice and to complain that the termination was discriminatory, but he never received a return phone call from Van Walden. *Id.* ¶ 8.

Plaintiff filed a MSPB appeal on August 13, 2010.  FAC ¶ 10.  In the appeal, Plaintiff challenged the allegations that he used discourteous language, was rude and confrontational, and that he lacked candor in his dealings with his supervisors.  FAC, Ex. B. at 2; Morrow Decl. ¶ 7; Ex. B.  Plaintiff did not allege that his termination was based on his partisan political activities or his marital status, nor did he allege any claims of discrimination or retaliation.  *Id.*  On December 9, 2010, the MSPB dismissed the appeal for lack of jurisdiction because Plaintiff made "no allegation that his termination was attended by marital status or political affiliation discrimination."  FAC, Ex. B., at 6; Morrow Decl. ¶ 8; Ex. C.

On November 3, 2010, Plaintiff contacted an EEO counselor to initiate a discrimination claim.  FAC, Ex. C. at 1; Morrow Decl. ¶ 9; Ex. D.  Plaintiff alleged that the Agency discriminated against him based on his national origin (Mexican) when he was terminated from his employment. *Id.*  On December 3, 2010, the USDA issued a Notice of Right to File a formal EEO complaint to Plaintiff, informing him that he had fifteen days to file a formal complaint of discrimination from receipt of the notice.  Morrow Decl. ¶ 10; Ex. C.  Plaintiff filed a formal EEO complaint of discrimination on December 14, 2010.  Morrow Decl. ¶ 11;  Ex. E.

On March 21, 2011, the Agency issued a Final Agency Decision dismissing Plaintiff's EEO complaint as untimely.  FAC, Ex. D at 3; Morrow Decl. ¶ 12; Ex. F.  The Final Agency Decision explained that under 29 C.F.R. § 1614.105(a)(1), an aggrieved person must initiate contact with an EEO counselor within 45 days of the alleged discriminatory matter or effective date of an allegedly discriminatory personnel action.  FAC, Ex. D at 2.

Plaintiff filed an appeal of the Final Agency Decision with the Office of Federal Operations.  FAC ¶ 14; Morrow Decl. ¶ 13.  The Office of Federal Operations affirmed the Agency's decision dismissing Plaintiff's EEO complaint on the basis that it was untimely.  Morrow Decl., Ex. G.

Plaintiff, then pro se, commenced this action on January 6, 2012.  Dkt. No. 1.  Plaintiff

4

1   subsequently retained counsel and filed his FAC on July 31, 2012.  Dkt. No. 35.  In his FAC,

2   Plaintiff alleges the following eight claims: (1) disability discrimination in violation of the

3   Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791

4   (Rehabilitation Act), as amended by the Americans with Disabilities Act of 1990, 12 U.S.C. §

5   12101, *et seq.*, and the Americans with Disability Act Amendments Act of 2008, P.L. 110-325 ; (3)

6   race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (Title VII);

7   (4) national origin discrimination in violation of Title VII; (5) retaliation in violation of Title VII;

8   (6) failure to grant family care and medical leave in violation of the FMLA; (7) failure to reinstate in

9   violation of the FMLA; and (8) retaliation in violation of the FMLA.  *Id.*

10          On August 30, 2012, Defendant filed the present motion to dismiss.  Dkt. No. 37.  Defendant

11   moves the Court pursuant to Rule 12(b)(1) to dismiss portions of Plaintiff's FAC for lack of subject

12   matter jurisdiction.  Defendant also moves the Court pursuant to Rule 12(b)(6) to dismiss Plaintiff's

13   claims for violation of the FMLA, on the grounds that these claims fail to state a claim upon which

14   relief can be granted.  Plaintiff filed his Opposition on September 13 (Dkt. No. 39) and Defendant

15   filed a Reply on September 20, 2012 (Dkt. No. 40).

16                                              **LEGAL STANDARD**

17   **A.      Rule 12(b)(1)**

18          Federal courts are courts of limited jurisdiction and these limits, whether imposed by the

19   Constitution or by Congress, cannot be disregarded or evaded.  *Kokkonen v. Guardian Life Ins. Co.*

20   *of Amer.*, 511 U.S. 375, 377 (1994); *Al Nieto v. Ecker*, 845 F.2d 868, 871 (9th Cir. 1988) (holding

21   that a federal court's "power to adjudicate claims is limited to that granted by Congress, and such

22   grants are not to be lightly inferred").  Federal courts have original jurisdiction over cases that

23   involve diversity of citizenship, a federal question, or cases to which the United States is a party.

24   *Kokkonen*, 511 U.S. at 377 (1994).  A federal court is presumed to lack jurisdiction in a particular

25   case unless the contrary affirmatively appears.  *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249

26   (9th Cir. 1979).

27          A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003), *cert. denied*, 541 U.S.

2  1009 (2004).  The Court must dismiss claims over which it lacks subject matter jurisdiction.  These

3  include cases where (1) the cause does not "arise under" any federal law or the United States

4  Constitution, (2) there is no case or controversy within the meaning of that constitutional term, or (3)

5  the cause is not one described by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198

6  (1962); *Colwell v. Dept. Health & Human Servs.*, 558 F.3d 1112, 1121-22 (9th Cir. 2009) (dismissal

7  for lack of subject matter jurisdiction appropriate where no case or controversy, including where

8  matter is unripe).  Furthermore, Plaintiff bears the burden of proving that subject matter jurisdiction

9  exists.  *Kokkonen*, 511 U.S. at 377 (internal citation omitted).

10  A Rule 12(b)(1) motion can attack either the sufficiency of the pleadings or challenge the

11  substance of the jurisdictional allegations despite the formal sufficiency of the complaint.  *Thornhill*

12  *Publ. Co. v. Gen'l Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).  When, as here, a

13  defendant challenges the latter, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and

14  the existence of disputed material facts will not preclude the trial court from evaluating for itself the

15  merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction

16  does in fact exist."  *Id.* (internal quotation marks and citation omitted).  The Court may look beyond

17  the complaint to matters of public record without converting the motion into one for summary

18  judgment.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted).

19  **B.      Rule 12(b)(6)**

20  Pursuant to Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state

21  a claim upon which relief can be granted.  Rule 8, which provides the standard for judging whether

22  such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of

23  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a

24  motion to dismiss, a complaint need not provide detailed factual allegations.  *Bell Atlantic v.*

25  *Twombly*, 550 U.S. 544, 555-56 (2007).  However, "a plaintiff's obligation to provide the 'grounds'

26  of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

27  the elements of a cause of action will not do."  *Id.* at 555 (citation omitted).

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face,"

2   not just conceivable. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual

3   content that allows the court to draw the reasonable inference that the defendant is liable for the

4   misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing

5   *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but

6   it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, threadbare

7   recitals of the elements of a cause of action, supported by mere conclusory statements, do not

8   suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity

9   and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

10   In reviewing a motion to dismiss, the court may also consider documents attached to the

11   complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation

12   omitted). In addition, the court may consider a matter that is properly the subject of judicial notice,

13   such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

14   If the court dismisses the complaint, it "should grant leave to amend even if no request to

15   amend the pleading was made, unless it determines that the pleading could not possibly be cured by

16   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this

17   determination, the court should consider factors such as "the presence or absence of undue delay,

18   bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue

19   prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

20   *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

21   **DISCUSSION**

22   In his Motion, Defendant argues that the Court lacks subject matter jurisdiction over

23   Plaintiff's discrimination and retaliation claims because he failed to exhaust his administrative

24   remedies before filing a civil action in district court. Def.'s Mot. at 7. Specifically, Defendant

25   argues that Plaintiff failed to initiate a complaint with an EEO Counselor within 45 days of each

26   incident of alleged discrimination. *Id.* at 9. Thus, Defendant argues that Plaintiff failed to exhaust

27   his administrative remedies for the following claims: (1) Disability discrimination in violation of the

28

Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; (3) race discrimination in violation of Title VII; (4) national origin discrimination in violation of Title VII; and (5) retaliation in violation of Title VII.  FAC ¶¶ 25-52.  Defendant further argues that Plaintiff is ineligible for equitable tolling because he had actual notice of the filing deadline and failed to exercise due diligence to maintain his claim.  Def.'s Mot. at 9.

As to Plaintiff's FMLA claims, Defendant argues that they are barred by the applicable two-year statute of limitations.  *Id.* at 11.  Defendant notes that the latest possible event constituting Plaintiff's FMLA claims is his termination date on July 16, 2010, yet he did not allege any violation of the FMLA until he filed his FAC on July 31, 2012, over two years after his termination.  *Id.* at 11-12.  Thus, Defendant argues that the Court must dismiss the FMLA claims as untimely.  *Id.* at 12.

In his Opposition, Plaintiff argues that he contacted an EEO officer within nine days of his termination and he timely met every other deadline in the EEO process prior to initiating his lawsuit.  Pl.'s Opp'n at 1.  Additionally, he argues that Defendant's FMLA violations were "willful," and that the statute of limitations is extended to three years in such instances.  *Id.*  Even without the extended statute of limitations, Plaintiff argues that his FAC "relates back" to his original complaint where he asserted the same operative facts which support his FMLA claims.  *Id.*

## A.    EEO Claims

Defendant first argues that Plaintiff's discrimination claims under the EEO must be dismissed for lack of subject matter jurisdiction because he failed to timely exhaust his administrative remedies.  Under 29 C.F.R. § 1614.105(a)(1), a federal employee must initiate contact with an EEO counselor within 45 days of the date of the alleged discrimination or adverse action.  The Ninth Circuit has held that "although the regulatory pre-filing exhaustion requirement at section 1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, we have consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court."  *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Lyons v. England*, 307 F.3d 1092, 1105 (9th

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Cir. 2002)).  In the Ninth Circuit, section 1614.105 is interpreted to permit an employee to initiate contact with *any* agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process.  *Kraus*, 572 F.3d at 1044 (citations omitted).

While failure to initiate contact with an EEO Counselor within 45 days is grounds for dismissal of an EEOC complaint, that time limit is "subject to waiver, estoppel and equitable tolling."  29 C.F.R §§ 1614.107(a)(2); 1614.604(c).  The Ninth Circuit has consistently held that compliance with section 1614.105 is not a jurisdictional prerequisite, but rather, a statute of limitations that may be tolled or which defendants may be estopped from asserting as a defense. *Kraus*, 572 F.3d at 1043; *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  However, failure to comply with the exhaustion requirement of section 1614.105 will be fatal to a discrimination complaint in federal court if the complainant fails to allege waiver, estoppel, or equitable tolling.  *Kraus*, 572 F.3d at 1043.

   1. <u>Whether Plaintiff timely initiated contact with an EEO Counselor</u>

In the present case, the Agency issued Plaintiff's Termination Notice on July 13, 2010. FAC, Ex. A.  The Notice explained Plaintiff's appeal rights to the MSPB and his right to file an EEO complaint of discrimination.  *Id.*, Ex. A at 3-4.  The Notice stated that Plaintiff needed to contact an EEO counselor within 45 days of receipt of the letter to initiate an EEO discrimination complaint. *Id.* at 4.  Although the Notice provided a telephone number to begin the EEO process, it also provided a separate number for Morrow and stated that Plaintiff should contact him if he had any questions about the appeal process.  *Id.* at 4.

Plaintiff contacted Morrow on July 22, 2010, nine days after receiving the Notice.  Morrow Decl. ¶ 6.  Morrow states that he is an "Employee Relations Specialist" for the Agency and that he advises and counsels management on matters involving federal employee conduct and performance actions.  *Id.* ¶ 1.  Morrow states that he is "very knowledgeable of EEO processes and complaints" and that he has access to the "files and records maintained by the USDA in connection with EEO claims."  *Id.*  Morrow states that during their July 22 telephone call, he and Plaintiff discussed his

UNITED STATES DISTRICT COURT
For the Northern District of California

1   options to file an MSPB appeal and an EEO complaint.  *Id.* ¶ 6.  He also told Plaintiff that he needed

2   to contact an EEO counselor within 45 days "to initiate an EEO discrimination complaint."  *Id.* ¶ 6.

3          In *Kraus*, the Ninth Circuit, citing an EEOC Management Directive, announced that "a

4   complainant may satisfy the criterion of EEO Counselor contact by initiating contact with any

5   agency official logically connected with the EEO process, even if that official is not an EEO

6   Counselor, and by exhibiting an intent to begin the EEO process."  572 F.3d at 1044.  While

7   generally this Directive applies to EEO non-counselor officials within the agency in question,

8   "contact with certain agency officials who are not EEO personnel has been held sufficient to satisfy

9   the regulation's 'contact with a Counselor' requirement, provided they are found to be 'logically

10  connected to the EEO process' within the agency."  *Id.* at 1044-45 (citing *Duke v. Slater*, EEOC

11  Dec. 01A02129, 2000 WL 732027, at *1 (E.E.O.C. May 22, 2000) (finding that a letter sent to the

12  Regional Director of the Department of Transportation's Office of Civil Rights qualified as initiating

13  contact and finding intent based on the letter sent seeking counseling on adding claims to a

14  complaint)).

15         Here, it appears that Plaintiff did timely exhibit his intent to begin some type of complaint

16  process in his contact with Morrow.  And, since there is no dispute that Morrow is an agency

17  official, the Court must determine whether he is "logically connected with the EEO Process."

18  *Kraus*, 572 F.3d at 1044.

19         *Kraus* discusses several EEOC cases in which non-EEO counselors were found to be agency

20  officials logically connected with the process.  *Id.* at 1045.  In *Duke*, the Regional Director of the

21  Department of Transportation's Office of Civil Rights was found logically connected to the EEO

22  process.  2000 WL 732027, at *1.  In each of the subsequent cases discussed, the agency official

23  contacted had "EEO" in their title.  *See Stanley v. Ashcroft*, EEOC Dec. 01A31053, 2004 WL

24  321206, at *3 (E.E.O.C. Feb.12, 2004) ("EEO Officer"); *Hardy v. Danzig*, EEOC Dec. 01981978,

25  1999 WL 91396, at *1 (E.E.O.C. Feb.12, 1999) ("Deputy EEO Officer"); *Waldrup v. Brownlee*,

26  EEOC Dec. 01A43725, 2005 WL 123294, at *3 (E.E.O.C. Jan.14, 2005) ("EEO Specialist");

27  *Clevenger v. Danzig*, EEOC Dec. 01985794, 2000 WL 270449, at *2 (E.E.O.C. Feb.29, 2000)

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1  ("former Deputy EEO Director").  Based on this authority, it does not appear that Morrow can be

2  considered an agency official logically connected with the process.  While the EEOC and the Ninth

3  Circuit have sanctioned contact with officials actually employed by, or with the phrase "EEO" in

4  their title, Morrow is neither.  Thus, to survive Defendant's motion to dismiss, Plaintiff must allege

5  facts which indicate that Defendant is either estopped from arguing that Plaintiff failed to timely

6  exhaust, or that the time to file was tolled until he actually initiated the EEO process in November

7  2010.  *Kraus*, 572 F.3d at 1043; FAC ¶ 11.

8          2.      Equitable Estoppel

9          "Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a

10 plaintiff from filing suit . . . ."  *Santa Maria*, 202 F.3d at 1176.  Factors to consider in determining

11 whether equitable estoppel applies are: "(1) the plaintiff's actual and reasonable reliance on the

12 defendant's conduct or representations[;] (2) evidence of improper purpose on the part of the

13 defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its

14 conduct[;] and (3) the extent to which the purposes of the limitations period have been satisfied."  *Id.*

15 "[E]quitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from

16 suing in time, as by promising not to plead the statute of limitations.  Equitable estoppel in the

17 limitations setting is sometimes called fraudulent concealment."  *Id.* at 1076-77 (citing *Cada v.*

18 *Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).

19         Here, it does not appear that Defendant's actions rose to the level of fraudulent concealment

20 or an improper purpose.  Plaintiff's Termination Notice explained in detail his appeal rights to the

21 MSPB and his right to file an EEO complaint of discrimination.  FAC, Ex. A at 3-4.  Plaintiff argues

22 that "equitable estoppel principles prohibit the USDA from now asserting that [he] failed to initiate

23 contact for over 45 days when he pursued his MSPB appeal based on the USDA's misleading

24 statements."  Pl.'s Opp'n at 9.  However, Plaintiff himself admits Morrow informed him that he

25 should contact an EEO counselor to initiate a discrimination complaint.  Pl.'s Opp'n at 11; Morrow

26 Decl. ¶ 6.  He provides no explanation as to why he chose to pursue only an MSPB appeal instead.

27 In addition, Plaintiff never alleged any discrimination claim before the MSPB.  Morrow Decl. ¶ 7;

28

11

Ex. B.  Instead, in his August 13, 2010 claim with the MSPB, Plaintiff alleged that he thought he was a satisfactory worker and that he was not rude or confrontational with other employees.  *Id.*  In fact, under Paragraph 11 of Plaintiff's MSPB appeal, he checked a box indicating that he had "No Additional Claims," where he could have checked a box indicating that he wished to file a claim for prohibited discrimination.  *Id.*  Thus, even if the Court were to accept Plaintiff's argument that Defendant acted to conceal the EEO process and misled him into filing an MSPB appeal for his discrimination claims instead, Plaintiff fails to establish why he then brought no discrimination claims in his MSPB appeal.

Plaintiff also argues that "[a]s a probationary employee, [he] had no right to appeal to the MSPB because it had no jurisdiction over his termination."  Pl.'s Opp'n at 8.  Plaintiff is incorrect. The Termination Notice stated that the MSPB has jurisdiction over a probationary employee for specific allegations concerning only discrimination based on martial status or political affiliation. FAC, Ex. A.  Thus, Plaintiff could appeal to the MSPB for these specific allegations.  The Notice also gave Plaintiff the option to pursue an EEO complaint if he chose to pursue a discrimination claim based on "race, color, religion, sex, age, national origin, or handicapping condition, or reprisal for former EEO activity."  FAC, Ex. A.  The language in the letter is neither misleading nor confusing; rather, it presents Plaintiff with two clear avenues for reporting different types of discrimination.  Plaintiff was notified regarding his appeal rights once again during his conversation with Morrow.  Pl.'s Opp'n at 11; Morrow Decl. ¶ 6.  Plaintiff admits that Morrow informed him that he should contact an EEO counselor to initiate a discrimination complaint.  Pl.'s Opp'n at 11; Morrow Decl. ¶ 6.  Based on this information, the Court finds that the USDA did not act to prevent Plaintiff from timely filing an EEO complaint or that it fraudulently concealed information regarding the filing requirements.  Thus, the Court finds that Plaintiff failed to timely exhaust his administrative remedies.

3.    Tolling

Plaintiff also contends that the filing deadline should be tolled.  Pl.'s Opp'n at 6-8.  Equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time

limitations where she had neither actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414-17 (9th Cir. 2002). Equitable tolling is available only "if a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period," not if the plaintiff failed to exercise due diligence in maintaining a possible claim that he knew or should have known about. *Santa Maria*, 202 F.3d at 1178. Knowing about a statute of limitations, but doing nothing, constitutes failure to exercise due diligence. *Villalvaso v. Odwalla, Inc.*, 2011 WL 1585604, at *6 (E.D. Cal. Apr. 25, 2011). Federal courts apply the equitable tolling doctrine sparingly. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990). The United States Supreme Court has allowed tolling of the applicable statute of limitations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.*

Here, Plaintiff had actual, direct knowledge of the 45-day deadline to report any alleged discrimination or retaliation to the EEO. Morrow Decl. ¶¶ 5-6; Ex. A. The July 13, 2010 Notice clearly stated Plaintiff's rights and the deadlines for filing an EEO complaint. The Notice states in relevant part:

> If you feel this action has been taken for a discriminatory reason (i.e., on the basis of your race, color, religion, sex, age national origin, or handicapping condition, or reprisal for former EEO Activity), you may file a discrimination (EEO) complaint in accordance with the procedures laid out in 29 CFR Part 1614. If you decide to pursue the discrimination complaint option regarding this decision to remove you, you will need to contact your EEO counselor within 45 days of your receipt of this letter, to either amend a current complaint, or to initiate a new complaint. . . .

FAC, Ex. A at 4. The Notice also provides the contact information for an EEO counselor. *Id.* Morrow also reviewed Plaintiff's rights and the appropriate deadlines with Plaintiff over the telephone on July 22, 2010. Morrow Decl. ¶ 6; Pl.'s Opp'n at 11. In addition, Plaintiff never alleged any discrimination claim before the MSPB. Morrow Decl. ¶ 7; Ex. B. As discussed above, in his August 13, 2010 claim with the MSPB, Plaintiff alleged that he thought he was a satisfactory worker and that he was not rude or confrontational with other employees. *Id.* He also indicated that he had "No Additional Claims," even though he could have checked a box indicating that he wished

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   to file a claim for prohibited discrimination. *Id.* It was not until November 3, 2010 that Plaintiff

2   contacted an EEO Counselor. FAC ¶ 11. Given that Plaintiff had actual notice of the statute of

3   limitations and timely filed his claims with the MSPB, but has presented no evidence as to why he

4   did not also timely contact an EEO counselor, the Court finds that equitable tolling is not appropriate

5   here.

6          4.      Conclusion

7          Based on this analysis, the Court finds that Plaintiff failed to contact an EEO counselor

8   within 45 days of the Termination Notice. As this requirement is jurisdictional, and Plaintiff has

9   failed to establish equitable estoppel or tolling, his EEO claims in the FAC must be dismissed for

10  lack of subject matter jurisdiction.

11  **B.     FMLA Claims**

12         Defendant next argues that the Court must dismiss Plaintiff's sixth, seventh, and eighth

13  claims for violations of the FMLA. Def.'s Mot. at 11. Defendant argues that the applicable two-

14  year statute of limitations bars all three claims because the last event constituting an alleged FMLA

15  violation was his termination on July 16, 2010, yet he did not allege any violation of the FMLA until

16  he filed his FAC on July 31, 2012. *Id.* at 11-12. In response, Plaintiff argues that the statute of

17  limitations should be extended to three years because Defendant willfully disregarded his rights.

18  Pl.'s Opp'n at 9-10. Plaintiff further argues that he "generally asserted facts in his original

19  complaint to put the USDA on notice that he was asserting denial of medical leave and retaliation as

20  claims" and that Defendant was therefore on notice regarding these claims. *Id.* at 10-11.

21         "The FMLA provides job security and leave entitlements for employees who need to take

22  absences from work . . . to care for family members with serious illnesses." *Xin Liu v. Amway*

23  *Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2612). The FMLA's central

24  provision guarantees eligible employees twelve weeks of leave in a one-year period. *Ragsdale v.*

25  *Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002). It is unlawful for an employer to "interfere

26  with, restrain, or deny the exercise of" these rights. *Id.* at 86-87. Ordinarily, a complaint alleging a

27  claim for violations of the FMLA must be filed no later than two years after the date of the last event

28

14

1    constituting the alleged violation.  29 U.S.C. § 2617(c)(1).  However, where a willful violation

2    occurs, the statute of limitations is extended to three years.  *Id.* § 2617(c)(2).

3          In this case, Plaintiff alleges that he went on leave to take care of his daughter in January

4    2010.  FAC ¶ 18.  Plaintiff does not allege that he applied for FMLA at this time; rather, he alleges

5    that he was never informed of his FMLA rights.  *Id.*  Plaintiff further alleges that he took leave on or

6    about June 10, 2010, "to treat his own serious health condition."  FAC ¶ 23.  Plaintiff does not allege

7    that he applied for leave under the FMLA.  *Id.*  Finally, Plaintiff alleges that the Agency terminated

8    him on July 16, 2010, while on leave.  FAC ¶ 24.  Accordingly, the "date of the last event

9    constituting the alleged [FMLA] violation," is presumably, the date of Plaintiff's termination: July

10   16, 2010.  29 U.S.C. § 2617(c)(1).  As he filed his FAC more than two years later, on July 31, 2012,

11   the question of whether Plaintiff's FMLA claims are barred by the statute of limitations turns on

12   whether Defendant committed a "willful" violation of the statute.

13         The FMLA does not define the term "willful" and the Supreme Court has not expressly

14   defined the term in the context of the FMLA.  *Hanger v. Lake Cnty.*, 390 F.3d 579, 583 (8th Cir.

15   2008).  Consequently, courts have borrowed the definition applied in the context of the Fair Labor

16   Standards Act.  *Id.*; *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003); *Porter v.

17   N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004); *Hoffman v. Prof'l Med. Team*, 394

18   F.3d 414, 417-18 (6th Cir. 2005); *Hanger*, 390 F.3d at 583; *Valentine v. Cal. Employment

19   Development Dept.*, 2012 WL 386682, at *6 (C.D. Cal. Feb. 06, 2012).  Under that definition, an

20   employer acts willfully if "the employer either knew or showed reckless disregard for the matter of

21   whether its conduct was prohibited by the statute."  *Hanger*, 390 F.3d at 583.

22         In his opposition, Plaintiff contends that the "USDA acted in a willful manner, knew that

23   its conduct was unlawful, and acted with disregard to his rights."  Pl.'s Opp'n at 9.  In his FAC,

24   Plaintiff alleges that he complained to Kunert about what he felt was discrimination because of his

25   medical issues and for having taken time off to care for his daughter's serious health condition.

26   FAC ¶ 21.  Plaintiff also alleges that Defendant "acted willfully, knowingly, and intentionally

27   engaging in the pattern of conduct described herein."  FAC ¶ 73.  He further alleges that Defendant

28

UNITED STATES DISTRICT COURT
For the Northern District of California

15

"acted with a willful and conscious disregard for the property or legal rights of Plaintiff." *Id.* The Court finds that when evaluated in the light most favorable to Plaintiff, the evidence precludes a finding as a matter of law that Defendant's alleged violation of the FMLA was not willful.  Crediting Plaintiff's allegations that he took leave on or about June 10, 2010, and that the Agency terminated him shortly thereafter and while still on leave, a rational jury could determine that the Agency "showed reckless disregard" for whether its conduct was prohibited by the FMLA.  *See Hanger*, 390 F.3d at 583;  *Valentine*, 2012 WL 386682, at *7.  Accordingly, the Court denies Defendant's Motion with respect to Plaintiff's claims for violation of the FMLA.

### CONCLUSION

Based on the analysis above, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiff's First through Fifth Causes of Action, and DENIES Defendant's Motion as to Plaintiff's Sixth through Eighth Causes of Action.  Because Plaintiff cannot cure the deficiencies in his First through Fifth Causes of Action, leave to amend is DENIED.  The Court shall conduct a case management conference on November 15, 2012 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California.  The parties shall file a joint case management statement by November 8, 2012.

**IT IS SO ORDERED.**

Dated:  October 1, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

16