UNITED STATES DISTRICT COURT

Northern District of California

MICHAEL A. VILLALOBOS,

Plaintiff(s),

v.

TOM J. VILSACK,

Defendant(s).

_______________________________________/

No. C 12-0138 MEJ

**ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE**

**INTRODUCTION**

Plaintiff Michael A. Villalobos (Plaintiff), a former probationary Forestry Technician with the United States Department of Agriculture (USDA), brings this action against Defendant Tom Vilsack (Defendant), as the Secretary of the USDA, for unlawful discrimination related to his termination from the USDA in 2010. On August 16, 2013, the Court ordered Plaintiff to show cause by September 5, 2013, why this case should not be dismissed for failure to prosecute and failure to comply with court deadlines. Dkt. No. 59. The Court informed Plaintiff that it was imperative that he respond to the order as his case could be dismissed if he failed to respond. *Id.* However, as of the date of this Order, Plaintiff has failed to respond. Based on the procedural history of this case, the Court finds it appropriate to dismiss this case pursuant to Federal Rule of Civil Procedure 41(b).

**BACKGROUND**

In June 2002, the USDA Forest Service (the Agency) hired Plaintiff as a GS-462-03 Temporary Forestry Aid for the Los Padres National Forest. First Am. Compl. (FAC) ¶ 16, Dkt. No. 35; Morrow Decl. ¶ 3, Dkt. No. 37-1. Plaintiff worked in this position for a few months each year from 2004 through 2006, and 2008. Morrow Decl. ¶ 3. On July 19, 2009, the Agency hired Plaintiff to work as a GS-462-05 Forestry Technician in Eldorado National Forest. FAC ¶ 18; Morrow Decl. ¶

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

4. This was a career conditional appointment subject to completion of a one year initial probationary period. Morrow Decl. ¶ 4. In January 2010, Plaintiff transferred back to the Los Padres National Forest. FAC ¶ 18; Morrow Decl. ¶ 4. Plaintiff states that he requested the transfer in order to provide care for his teenage daughter's serious health condition. FAC ¶ 18. Plaintiff often took intermittent time off work to assist with his daughter's care, using a combination of sick leave, annual leave, and vacation time. *Id.* Plaintiff states that he was never informed of his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, to take job-protected leave. *Id.*

In late March 2010, Plaintiff was reassigned to the Santa Maria detail under the temporary supervision of Ken Kunert. *Id.* ¶ 19. Immediately after his assignment, Plaintiff alleges that Kunert began to treat him differently than other similarly-situated employees, including belittling his work performance, following him around to monitor his work, and expressing frustration when Plaintiff took time off to care for his daughter. *Id.*

In late April 2010, Plaintiff strained his neck while lifting five-gallon jugs of water out of a truck and was diagnosed with C-T strain and cervical muscle spasm. *Id.* ¶ 20. Plaintiff was able to return to work on modified duty from April 30 to June 9, 2010. *Id.* Over this time period, Plaintiff's medical condition improved and he was eventually released to full duty by June 9, 2010. *Id.* Because of his medical disability, Plaintiff was provided a light duty assignment. *Id.*

On or about May 22, 2010, Plaintiff met with Kunert and complained about what he felt was discrimination based on his Mexican nationality and ancestry, and discrimination because of his own disability which did not allow him to perform his normal job duties. *Id.* ¶ 21. Plaintiff also complained that Kunert was treating him differently because of his light duty assignment, his inability to perform his normal duties as a Forestry Technician, and because he took time off to care for his daughter's health condition. *Id.* Plaintiff alleges that Kunert prepared a document during the meeting in which he laughed at Plaintiff's complaints and wrote the word "MEXICAN" in large block letters. *Id.* Kunert gave Plaintiff a copy to him, but said it was not a write up or disciplinary notice. *Id.*

Plaintiff took a medical leave of absence beginning on or about June 10, 2010 to

treat his own health condition. *Id.* ¶ 23. On July 13, 2010, during Plaintiff's probationary period, the Agency issued him a Notice of Termination (Notice). *Id.* ¶ 6; Morrow Decl. ¶ 5. The Notice informed Plaintiff that effective July 16, 2010, he would be terminated for the following charges: (1) use of discourteous language towards a person responsible for assigning work; (2) use of rude and confrontational language towards others; and (3) lack of candor. FAC, Ex. A; Morrow Decl. ¶ 5, Ex. A. The Notice described seven specific examples where Plaintiff was rude, angry, defensive, confrontational, or unresponsive during his employment. *Id.* Examples included Plaintiff getting mad when reminded not to use a Government vehicle to get lunch, responding that reports were "stupid" when instructed to complete them, and being unresponsive to radio calls for three hours. FAC, Ex. A at 2.

The Notice explained Plaintiff's right to file an appeal to the Merit Systems Protection Board (MSPB) for discrimination based on partisan political reasons or marital status and his right to file an Equal Employment Opportunity (EEO) complaint of discrimination based on race, color, religion, sex, age, national original, handicapping condition, or reprisal for former EEO activity. *Id.* at 3-4. For the MSPB process, the Notice provided that Plaintiff had 30 days to submit an appeal. *Id.* at 3. For the EEO process, the Notice provided that Plaintiff needed to contact an EEO counselor within 45 days of receipt of the letter to initiate an EEO discrimination complaint. *Id.* at 4. The Notice provided a telephone number to initiate the EEO process, but also stated that if Plaintiff had any questions "about the process regarding an appeal," he should contact "R5 Labor Relations Specialist Virgil Todd Morrow" at a separate telephone number. *Id.*

On July 22, 2010, Plaintiff contacted Morrow and spoke with him about the MSPB and EEO procedures. Morrow Decl. ¶ 6; Pl.'s Opp'n at 3, Dkt. No. 39. Plaintiff also made two phone calls to Peggy Hernandez, the person who issued the termination letter, during the last week of July to complain about the reasons for his termination. FAC ¶ 7. Plaintiff states that he was only able to speak with Hernandez's assistant, who informed him that he never be allowed to speak with Hernandez. *Id.* Plaintiff alleges that he never received a return phone call from Hernandez. *Id.* Plaintiff also alleges that he placed three separate phone calls to his immediate supervisor, Erik Van

Walden, in late July or early August to discuss the basis for the termination notice and to complain that the termination was discriminatory, but he never received a return phone call from Van Walden. *Id.* ¶ 8.

Plaintiff filed a MSPB appeal on August 13, 2010. FAC ¶ 10. In the appeal, Plaintiff challenged the allegations that he used discourteous language, was rude and confrontational, and that he lacked candor in his dealings with his supervisors. FAC, Ex. B. at 2; Morrow Decl. ¶ 7; Ex. B. Plaintiff did not allege that his termination was based on his partisan political activities or his marital status, nor did he allege any claims of discrimination or retaliation. *Id.* On December 9, 2010, the MSPB dismissed the appeal for lack of jurisdiction because Plaintiff made "no allegation that his termination was attended by marital status or political affiliation discrimination." FAC, Ex. B., at 6; Morrow Decl. ¶ 8; Ex. C.

On November 3, 2010, Plaintiff contacted an EEO counselor to initiate a discrimination claim. FAC, Ex. C. at 1; Morrow Decl. ¶ 9; Ex. D. Plaintiff alleged that the Agency discriminated against him based on his national origin (Mexican) when he was terminated from his employment. *Id.* On December 3, 2010, the USDA issued a Notice of Right to File a formal EEO complaint to Plaintiff, informing him that he had fifteen days to file a formal complaint of discrimination from receipt of the notice. Morrow Decl. ¶ 10; Ex. C. Plaintiff filed a formal EEO complaint of discrimination on December 14, 2010. Morrow Decl. ¶ 11; Ex. E.

On March 21, 2011, the Agency issued a Final Agency Decision dismissing Plaintiff's EEO complaint as untimely. FAC, Ex. D at 3; Morrow Decl. ¶ 12; Ex. F. The Final Agency Decision explained that under 29 C.F.R. § 1614.105(a)(1), an aggrieved person must initiate contact with an EEO counselor within 45 days of the alleged discriminatory matter or effective date of an allegedly discriminatory personnel action. FAC, Ex. D at 2.

Plaintiff filed an appeal of the Final Agency Decision with the Office of Federal Operations. FAC ¶ 14; Morrow Decl. ¶ 13. The Office of Federal Operations affirmed the Agency's decision dismissing Plaintiff's EEO complaint on the basis that it was untimely. Morrow Decl., Ex. G.

Plaintiff, then pro se, commenced this action on January 6, 2012. Dkt. No. 1. Plaintiff

subsequently retained counsel and filed his FAC on July 31, 2012. Dkt. No. 35. In his FAC, Plaintiff alleges the following eight claims: (1) disability discrimination in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act), as amended by the Americans with Disabilities Act of 1990, 12 U.S.C. § 12101, *et seq.*, and the Americans with Disability Act Amendments Act of 2008, P.L. 110-325 ; (3) race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (Title VII); (4) national origin discrimination in violation of Title VII; (5) retaliation in violation of Title VII; (6) failure to grant family care and medical leave in violation of the FMLA; (7) failure to reinstate in violation of the FMLA; and (8) retaliation in violation of the FMLA. *Id.*

On August 30, 2012, Defendant filed a motion to dismiss. Dkt. No. 37. Defendant moved the Court pursuant to Rule 12(b)(1) to dismiss portions of Plaintiff's FAC for lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6) to dismiss Plaintiff's claims for violation of the FMLA on the grounds that these claims fail to state a claim upon which relief can be granted. On October 1, 2012, the Court granted Defendant's motion without leave to amend as to Plaintiff's First through Fifth Causes of Action, and denied the motion as to Plaintiff's Sixth through Eighth Causes of Action. Dkt. No. 41. Thus, only Plaintiff's FMLA claims remain pending. The parties subsequently participated in court-sponsored mediation but were unable to resolve the case. Dkt. No. 50.

On June 13, 2013, Plaintiff's counsel filed a motion to withdraw as counsel of record, stating that Plaintiff breached an agreement as to the payment of fees and costs and had made it unreasonably difficult for counsel to carry out their employment effectively. Dkt. No. 55. Plaintiff filed no response to the motion. The Court granted counsel's motion on July 3, 2013. Dkt. No. 56.

Although the case was scheduled for a Case Management Conference on August 22, 2013, Defendant filed a Case Management Statement on August 15, 2013, in which Defendant's counsel stated that she had been unable to contact Plaintiff. Dkt. No. 58. As Plaintiff did not filed any statement of his own and has made no appearance in this matter since the Court granted counsel's motion to withdraw, the Court vacated the August 22 Case Management Conference and ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute and failure to

comply with court deadlines. Dkt. No. 59. Although the Court warned Plaintiff that his case could be dismissed for failure to prosecute, he has failed to respond to the Order to Show Cause.

**LEGAL STANDARD**

Under Rule 41(b), "the district court may dismiss an action for failure to comply with any order of the court." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992); *see also Oliva v. Sullivan*, 958 F.2d 272, 273-74 (9th Cir. 1992) (district court may dismiss sua sponte for failure to meet court deadline). "[T]he district court must weigh the following factors in determining whether a Rule 41(b) dismissal is warranted: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). "These factors are 'not a series of conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.'" *In re Phenylpropanolamine (PPA) Products Liab. Litig.* ("*In re PPA*"), 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)). Dismissal is appropriate "where at least four factors support dismissal . . . or where at least three factors 'strongly' support dismissal." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

**DISCUSSION**

Here, the Court finds that the *Henderson* factors support dismissal. First, "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiff has delayed adjudication of the claims in this case by failing to respond to Defendant's counsel's requests to meet and confer, failed to respond to this Court's show cause order, and has failed to make any appearance in this matter since the Court granted his counsel's motion to withdraw.

Second, the Court's need to manage its docket also weighs in favor of dismissal. Non-compliance with procedural rules and the Court's orders wastes "valuable time that [the Court]

could have devoted to other . . . criminal and civil cases on its docket." *Ferdik*, 963 F.2d at 1261.

As for the third *Henderson* factor, the mere pendency of a lawsuit cannot constitute sufficient prejudice to require dismissal. *Yourish*, 191 F.3d at 991. However, "prejudice . . . may . . . consist of costs or burdens of litigation." *In re PPA*, 460 F.3d at 1228. Moreover, "a presumption of prejudice arises from a plaintiff's unexplained failure to prosecute." *Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 753 (9th Cir. 2002). A plaintiff has the burden of demonstrating a non-frivolous reason for failing to meet a court deadline. *Id.*; *see also Yourish*, 191 F.3d at 991. Here, Plaintiff has failed to respond to the Court's Order to Show Cause and has not offered an explanation for the failure to meet and confer with Defendant or otherwise appear in this matter. Therefore, the Court concludes that the third *Henderson* factor also supports dismissal.

The fourth *Henderson* factor normally weighs strongly against dismissal. *See, e.g., Hernandez*, 138 F.3d at 399. "At the same time, a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines . . . cannot move forward toward resolution on the merits." *In re PPA*, 460 F.3d at 1228. The Ninth Circuit has "recognized that this factor 'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *Id.* (quoting *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996)). Thus, if the fourth *Henderson* factor weighs against dismissal here, it does so very weakly.

Finally, the Court has already attempted less drastic sanctions, without success, and therefore determines that trying them again would be inadequate or inappropriate. "Though there are a wide variety of sanctions short of dismissal available, the district court need not exhaust them all before finally dismissing a case." *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). Here, the Court already attempted the lesser sanction of issuing an Order to Show Cause and giving Plaintiff an opportunity to explain his failure to prosecute his case. As Plaintiff failed to respond, issuing another order for Plaintiff to show cause is likely to be futile. *See, e.g., Gleason v. World Sav. Bank, FSB*, 2013 WL 3927799, at *2 (N.D. Cal. July 26, 2013) (finding dismissal under Rule 41(b) appropriate where the court previously attempted the lesser sanction of issuing an Order to

Show Cause and giving the plaintiff an additional opportunity to re-plead). Further, the Order to Show Cause warned Plaintiff of the risk of dismissal; thus Plaintiff cannot maintain that the Court has failed in its "obligation to warn the plaintiff that dismissal is imminent." *Oliva*, 958 F.2d at 274. Thus, the Court finds that the fifth factor also weighs in favor of dismissal.

**CONCLUSION**

Based on the analysis above, the Court finds that at least four of the five *Henderson* factors weigh in favor of dismissal. Plaintiff failed to file meet and confer with Defendant or respond to an order to show cause. Thus, Plaintiff has failed to prosecute this case and dismissal is appropriate. However, a less drastic alternative is to dismiss without prejudice. *See Ferdik*, 963 F.2d at 1262. Dismissal will minimize prejudice to Defendant, but dismissing the case without prejudice will preserve Plaintiff's ability to seek relief. Thus, "[i]n an abundance—perhaps overabundance—of caution," the Court finds that dismissal without prejudice is appropriate. *Faulkner v. ADT Security Servs., Inc.*, 2013 WL 174368, at *4 (9th Cir. Jan. 17, 2013) (remanding to the district court in order to consider whether dismissal should have been without prejudice).

Accordingly, this case is hereby DISMISSED WITHOUT PREJUDICE for failure to prosecute and failure to comply with the Court's deadlines and orders.

**IT IS SO ORDERED.**

Dated: September 16, 2013

Maria-Elena James
United States Magistrate Judge